UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LILA L. DECKER, Individually, and as Personal Representative for the Estate of GEORGE A. DECKER, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 4:09-CV-1361 (CEJ) ) |
| JOSEPH T. BOOKSTAVER, et al., | ) ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendant Edward D. Jones & Co. L.P. (Edward Jones) to dismiss and to compel arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 2. Defendant Joseph T. Bookstaver has filed a separate motion adopting the arguments propounded by Edward Jones. Plaintiff has filed a response in opposition to the motions and the issues are fully briefed.

In 2004, acting on the advice of defendant Bookstaver, an employee of defendant Edward Jones, plaintiff Lila Decker and her late husband George Decker terminated their existing trusts and created new revocable living trusts; they also executed Account Authorizations with Edward Jones. Plaintiff alleges that the trusts were drafted to benefit Bookstaver and were the product of fraudulent misrepresentations or undue influence. Acting on her own behalf and as personal representative of George Decker's estate, plaintiff filed suit asserting the following claims: fraud in connection with the purchase or sale of securities (Count I); fraud in the inducement (Count II); fraud in withholding assets (Count III); conspiracy to defraud (Count IV); negligent misrepresentation (Count V); breach of fiduciary

duty (Count VIII); and negligence (Count IX).[1] Defendant Edward Jones contends that these claims fall within the scope of an agreement to arbitrate contained in the Account Authorizations. Defendant Bookstaver contends that he, too, is entitled to seek arbitration because he was employed by Edward Jones at the time of the events giving rise to the dispute.

## I. Background

The trusts at issue were signed in April 2004. On May 13, 2004, George and Lila Decker each signed documents entitled "Fiduciary/Trust Account Authorization and Acknowledgement [sic] Form." The following statement appears immediately under the heading "Account Authorization:"

> **The Edward Jones Account Agreement and Disclosure Statement contains on page 20 a binding arbitration provision which may be enforced by the parties. By my/our signature(s) below, I/we have received a copy of this document . . . and agree to its terms and conditions.**

Deft's Exs. A1 and A2 (emphasis in original) [Docs. #54-2, #54-3]. The signatures of George and Lila Decker appear in the places indicated on the forms.

The arbitration provision referred to in the Account Authorization states:

**ARBITRATION AGREEMENT**

1. **Arbitration is final and binding on the parties.**
2. **The parties are waiving their right to seek remedies in court, including the right to jury trial.**
3. **Pre-arbitration discovery is generally more limited than and different from court proceedings.**
4. **The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.**

---

[1] Plaintiff settled Counts VI and VII, seeking to void George Decker's 2004 trust pursuant to § 456.4-406, Mo. Rev. Stat., and dismissed her complaint with respect to the beneficiaries of the trust.

> 5. **The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.**
>
> **I agree that this Agreement shall be governed by the laws of the State of Missouri without giving effect to the choice of law or conflict of laws provisions thereof. Any controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents, and/or employees for me, to this Agreement, or to the breach thereof, . . . shall be settled by arbitration in accordance with the rules then in effect of the Board of Directors of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc. as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after demand by you that I make such an election, then you will have the right to elect the arbitration tribunal of your choice. Judgement upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.**

Id. at 21-21 (emphasis in original).

Defendants move to compel arbitration pursuant to this provision. Plaintiff argues that the Court should apply Missouri, not federal, law to determine whether the arbitration provision is enforceable. She further argues that the trust documents associated with the Account Authorizations were induced by fraud and undue influence and that the arbitration provision is thus unenforceable under Missouri law. Alternatively, plaintiff argues that, if federal law applies, the dispute falls outside the scope of the agreement to arbitrate.

II. **Discussion**

The Federal Arbitration Act (FAA) states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA in order to

"reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." American Bankers Ins. Co. of Florida v. Inman, 436 F.3d 490, 492-93 (5th Cir. 2006) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). The FAA's purpose is "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983). "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Id. at 24-25.

The FAA permits an aggrieved party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." American Bankers Ins. Co., 436 F.3d at 493; see also 9 U.S.C. § 4. A court's role under the FAA is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute. Pro Tech Industries, Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004). As a matter of law, questions regarding arbitrability should be resolved in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." Id. A federal court must compel arbitration once it determines that the dispute falls within the scope of valid arbitration agreement. 9 U.S.C. §§ 3, 4.

Plaintiff first asserts that the Court should apply Missouri law to determine whether to enforce the arbitration provision because the Agreement provides that it "shall be governed by the laws of the State of Missouri." "Most contracts include a choice-of-law clause, and, thus if each of these clauses were read to foreclose the application of the substantive law enacted by Congress in the FAA, the FAA would be applicable in very few cases. Such an interpretation of the FAA is simply not viable, as it would effectively emaciate the Act itself." Ferro Corp. v. Garrison Indus., Inc., 142 F.3d 926, 938 (6th Cir. 1998). Before interpreting a "general state choice-of-law clause in a contract that also includes an arbitration provision" as precluding the application of the FAA, the Court must find that "the parties' intent that the agreement be so construed is abundantly clear." UHC Management Co. v. Computer Sciences Corp., 148 F.3d 992, 996-97 (8th Cir. 1998).

The Court concludes that the Agreement does not manifest a clear intention to foreclose application of the FAA. The Court notes that the Agreement dictates the application of the rules of the National Association of Securities Dealers, Inc., or the Board of Directors of the New York Stock Exchange, rather than the Missouri Uniform Arbitration Act, which would be some indication that the parties intended the state law to preempt the FAA. See UHC, 148 F.3d at 997 (noting failure to cite state arbitration law in determining that the agreement did not show intent to preclude application of the FAA); see also Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63-64 (1995) (addressing a substantially similar provision and holding that it was error to construe the choice-of-law and arbitration sentences as conflicting, stating "neither sentence intrudes upon the other");

Precision Press, Inc. v. MLP U.S.A., Inc., 620 F.Supp.2d 981, 991 (N.D. Iowa 2009) (listing cases holding that a choice-of-law provision does not displace application of the FAA). Thus, the Court determines that the FAA applies to the parties' agreement to arbitrate. Plaintiff's arguments that the arbitration provision is unenforceable under Missouri law are moot.

Plaintiff argues in the alternative that the arbitration provision is unenforceable under the FAA because her allegations fall outside the scope of the agreement to arbitrate. The arbitration provision states that "[a]ny controversy arising out of or relating to any of my accounts or transactions with you, your officers, directors, agents, and/or employees for me, to this Agreement . . . shall be settled by arbitration." The language of this provision is quite broad and would appear to cover plaintiff's allegations that defendant Bookstaver, acting in his role as an Edward Jones employee, fraudulently induced plaintiff and her husband to enter into the trusts.

Plaintiff finds significance in the fact that the trust documents were executed before the Account Authorizations. She contends that the arbitration agreement cannot be applied retroactively to reach her claims arising from the formation of the trusts and cites Houlihan v. Offerman & Co., Inc., 31 F.3d 692 (8th Cir. 1994), to support her contention. The plaintiffs in Houlihan filed suit against their broker to recover damages for investment damages. Their agreement to arbitrate, which was signed several years after the accounts were opened, stated that it applied to all controversies arising from any agreement entered into "before, on, or after the date" the account was opened. Id. at 693-94. Plaintiff argues that, in the absence

of similar language, an arbitration agreement may not be applied retroactively. However, the question under consideration in <u>Houlihan</u> was not whether the arbitration agreement could be applied retroactively, but whether an allegation that the entire contract was procured by fraud could defeat a motion to compel arbitration. Thus, <u>Houlihan</u> is completely silent with respect to the point plaintiff argues. And, with respect to that point, other courts have construed arbitration agreements to include claims that arose before the execution of the agreement. <u>Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.</u>, 13 F.3d 330, 332 (10th Cir. 1993); <u>Mail-Well Envelope v. International Ass'n of Machinists and Aerospace Workers</u>, 916 F.2d 344, 346-37 (6th Cir. 1990); <u>Carlisle v. CitiMortgage, Inc.</u>, 2007 WL 1557411 *3, No. 4:06-CV-677 (CAS) (E.D. Mo. May 25, 2007). Thus, plaintiff's claim that the parties' dispute falls outside the scope of the arbitration agreement fails.

The Court concludes that the Arbitration Agreement is valid and encompasses the parties' dispute.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Edward D. Jones & Co. L.P. to dismiss and to compel arbitration [Doc. #55] is **granted**.

**IT IS FURTHER ORDERED** that the motion of defendant Joseph T. Bookstaver to dismiss and to compel arbitration [Doc. #80] is **granted**.

 

_____
CAROL E. JACKSON

UNITED STATES DISTRICT JUDGE

Dated this 26th day of May, 2010.